UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JACQUELYN B. T.,

                    Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. C21-1126 TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance (DIB) and supplemental security income (SSI) benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

I.      ISSUES FOR REVIEW

A. Whether the ALJ Complied with the Court's and the Appeal Council's and the Remand Order

B. Whether the ALJ Properly Evaluated Medical Opinion Evidence

C. Whether the ALJ Properly Assessed the Residual Functional Capacity

II.      BACKGROUND

On August 26, 2013, plaintiff filed a Title II application for a period of disability and disability insurance (DIB), alleging a disability onset date of March 1, 2013.

Administrative Record ("AR") 141. Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018, making the relevant period for plaintiff's Title II application March 1, 2013 through March 31, 2018. AR 1574. Plaintiff's application was denied initially (AR 151) and on reconsideration. AR 167. Administrative Law Judge ("ALJ") Gordon W. Griggs held a hearing on February 27, 2015 (AR 58-94) and issued a decision on May 4, 2015, finding plaintiff not disabled. AR 169-88.

Plaintiff then filed a Title XVI application on December 15, 2015 for supplementary security income (SSI). AR 370-78. On November 17, 2016, the Appeals Council vacated the hearing decision as to plaintiff's Title II application, remanding for further proceedings and for the ALJ to decide whether to consolidate plaintiff's Title II and Title XVI applications. AR 189-94. ALJ Virginia M. Robinson held a hearing on September 21, 2017 (AR 95–139) for plaintiff's consolidated claims and issued a decision on September 6, 2018, finding plaintiff not disabled. AR 12–36.

Plaintiff sought a review by this Court of the September 6, 2018 decision, and the parties stipulated to a remand. AR 1641-46. ALJ Robinson held a hearing on remand on March 18, 2021. AR 1600-38. ALJ Robinson issued a partially favorable decision on June 6, 2021, finding that: plaintiff was not disabled through the date last insured, plaintiff was not disabled prior to May 19, 2021, and plaintiff became disabled on May 19, 2021 through the date of the decision. AR 1588.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

IV.     DISCUSSION

In this case, the ALJ found that plaintiff had the following severe impairments: chronic hepatitis C, fibromyalgia, right shoulder adhesive capsulitis, obesity, sleep apnea, headaches, osteoarthritis of the knees, depression without psychotic symptoms, anxiety, and borderline personality disorder. AR 1574.

Based on the limitations stemming from these impairments, the ALJ found that plaintiff could perform a reduced range of light work. AR 1577. Relying on vocational expert ("VE") testimony, the ALJ found at step four that plaintiff could not perform her past relevant work. AR 1586. On May 19, 2021, plaintiff's age category changed to advanced age under 20 C.F.R. §§ 404.1563 and 416.963. AR 1587. The ALJ found that prior to May 19, 2021, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed; therefore, the ALJ determined at step five that plaintiff was not disabled prior to May 19, 2021. AR 1587.

1    A.  Whether the ALJ Erred by Failing to Follow the Directions of the Appeals Council
2        on Remand

3        Plaintiff argues that the ALJ failed to comply with the orders of this Court and the
4    Appeals Council after this Court remanded her case on February 18, 2020. Dkt. 12, pp.
5    16-18.

6        Under the rule of mandate, "the mandate of a higher court is controlling as to
7    matters within its compass." *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 168 (1939). A
8    lower court is generally "bound to carry the mandate of the upper court into execution
9    and [may] not consider the questions which the mandate laid at rest." *Id.* Additionally,
10   "as a general principle, the United States Supreme Court has recognized that an
11   administrative agency is bound on remand to apply the legal principles laid down by the
12   reviewing court." *Ischay v. Barnhart,* 383 F.Supp. 2d 1199, 1213–1214 (C.D. Cal.
13   2005); *see Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) (citations omitted) (deviation
14   from the court's remand order in the subsequent administrative proceedings is itself
15   legal error, subject to reversal on further judicial review).

16       On September 21, 2017, ALJ Robinson held a hearing for plaintiff's Title II and
17   XVI applications (AR 95–139), and issued a decision on September 6, 2018, finding
18   plaintiff was not disabled until May 19, 2021. AR 1587. After plaintiff sought a review by
19   this Court of the September 6, 2018 decision, the parties filed a stipulation and the
20   Court remanded the case for further administrative proceedings, a de novo hearing, and
21   a new decision. AR 1641-46. This Court ordered that "[o]n, remand, the ALJ will
22   reevaluate the opinion evidence, including the opinion of Dr. Carstens." AR 1644. The
23   Appeals Council entered a similar order for "further proceedings," including a further

24
25

1    evaluation of Dr. Carstens's opinion and "[g]iving consideration to the opinion evidence .

2    . . and explain[ing] the weight given to such opinion evidence." *See* AR 1649-50.

3         On remand, the ALJ reconsidered the opinion evidence as instructed, but plaintiff

4    contends that the ALJ did not comply with this Court's and the Appeal Council's order

5    because the evaluations of the opinion evidence, excluding Dr. Carstens's, were the

6    same from her 2018 decision. Dkt. 12, pp. 16-18.

7         The ALJ provided the same reasons and weight for the opinions of Dr. Shenoy,

8    Dr. Koenig, Dr. Yun, Dr. Hurley, and Dr. Haas, but the ALJ did not err in doing so.

9    Defendant points out that there is nothing in this Court's 2020 order that indicates that

10   the ALJ was required to give different reasoning in the opinions' evaluations. Dkt. 13, p.

11   10. The Court agrees.

12        This Court instructed that the ALJ "reevaluate opinion evidence, including Dr.

13   Carstens's," which the ALJ did. *See* AR 1642. The Appeals Council order similarly

14   instructed that the ALJ further evaluate Dr. Carstens's opinion, and explain the weight

15   given to the rest of the opinion evidence. AR 1649-50. The ALJ did so here, therefore

16   the ALJ properly complied with and carried out the explicit directive of this

17   Court. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (a lower court is generally

18   'bound to carry the mandate of the upper court into execution and [may] not consider

19   the questions which the mandate laid at rest.")

20        B. <u>Whether the ALJ Properly Assessed Medical Opinion Evidence</u>

21        Plaintiff assigns error to the ALJ's evaluation of the medical opinions of: Dr.

22   Carstens, Dr. Shenoy, Dr. Koenig, Dr. Yun, Lorraine Chase, CPD, Dr. Hurley, and Dr.

23   Haas. Dkt. 12, pp. 7–16.

24

25

1

2      1.  <u>Medical Opinion Standard of Review</u>

3      Under current Ninth Circuit precedent, an ALJ must provide "clear and

4  convincing" reasons to reject the uncontradicted opinions of an examining doctor, and

5  "specific and legitimate" reasons to reject the contradicted opinions of an examining

6  doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or

7  examining physician's opinion is contradicted, the opinion can be rejected "for specific

8  and legitimate reasons that are supported by substantial evidence in the record." *Id.*

9  (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722

   F.2d 499, 502 (9th Cir. 1983)).

10      2.  <u>Opinion of Dr. Carstens</u>

11      Luci Carstens, Ph.D. evaluated plaintiff on December 12, 2017 by performing a

12 clinical interview, a mental status examination, and reviewing plaintiff's records. AR

13 1557-63. Her diagnostic impression included: bipolar disorder, generalized disorder,

14 panic disorder, post-traumatic stress disorder, and borderline personality disorder. AR

15 1563. She opined that plaintiff would "have significant difficulty" in sustaining

16 concentration for prolonged periods, maintaining emotional stability, and working

17 consistently for extensive periods. AR 1562. She further opined that her mental health

18 would "markedly interfere" with plaintiff's ability to handle the demands and expectations

19 of a workplace, and plaintiff would have "marked difficulty" completing a normal workday

20 and workweek without interruption. *Id.*

21      Plaintiff argues that the ALJ erred giving Dr. Carstens's opinion "limited weight"

22 because of its inconsistency with (1) the medical evidence showing plaintiff had

23

24

25

1  improved with medication and counseling, (2) plaintiff's daily activities, and (3) her own

2  treatment notes. Dkt. 12, pp. 8–10; AR 1583.

3    Regarding the ALJ's first reason, "evidence of medical treatment successfully

4  relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878

5  F.3d 867, 876 (9th Cir. 2017) (evidence of medical treatment successfully relieving

6  symptoms can undermine a claim of disability). *See also* 20 C.F.R. §

7  404.1529(c)(3)(iv) (the effectiveness of medication and treatment are relevant to the

8  evaluation of a claimant's alleged symptoms). Here, defendant points to a series of

9  treatment notes from plaintiff's therapy sessions regarding plaintiff's progress with her

10  ability to cope with symptoms. AR 1798–1814, 1947-48, 1950. The notes report that

11  plaintiff's medication has been effective, that she has been stabilized, and that she has

12  been feeling better, even after being discharged from her program. AR 1947-57. Other

13  treatment notes describe plaintiff as "actively involved" in her sessions and her progress

14  is described as "Improved." AR 1808-14. There is substantial evidence in the record

15  supporting the ALJ's finding that plaintiff improved with medication, therefore the ALJ

16  did not err in discounting Dr. Carstens's opinion on this basis.

17    Having found that the ALJ did not err in finding Dr. Carstens's opinion

18  inconsistent with evidence of plaintiff's improvement, the Court need not address

19  whether the ALJ erred in evaluating the opinion on other grounds. Even if the ALJ

20  committed error on those grounds, those errors would be harmless because the ALJ

21  has provided a specific and legitimate reason for discounting Dr. Carstens's opinion.

22  *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th

23

24

25

1    Cir. 2008) (when there is a legally valid reason supported by the record, inclusion of

2    other erroneous reasons is harmless).

3        3. <u>Opinion of Dr. Shenoy</u>

4        Ananth K. Shenoy, M.D. evaluated plaintiff on September 11, 2017, and opined

5    that plaintiff struggles with completing simple tasks, such as her daily activities and

6    keeping her appointments. AR 1391. Dr. Shenoy further opined that plaintiff's severe

7    social anxiety and bipolar disorder impacts her everyday functioning, and that she

8    cannot envision plaintiff maintaining a job at present. *Id.* Dr. Shenoy provided other

9    opinions in the record, and the ALJ evaluated two of Dr. Shenoy's opinions, but plaintiff

10   specifically assigns error only to the ALJ's evaluation of the September 2017 opinion.

11   Dkt. 12, pp. 10-11.

12       Plaintiff argues that the ALJ erred in discounting Dr. Shenoy's opinion based on

13   the ALJ's finding that the opinion is inconsistent with plaintiff's daily activities, including

14   her ability to attend her medical appointments. *Id.*; AR 1585.

15       Inconsistency with a claimant's activities may serve as a proper basis for

16   rejecting a medical source's opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.

17   2001). Yet disability claimants should not be penalized for attempting to lead normal

18   lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

19   1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant need not

20   "vegetate in a dark room" in order to be deemed eligible for benefits)).

21       Here, the ALJ pointed to plaintiff's ability "to tend to numerous daily activities"

22   and attend her appointments. AR 1585. But "many home activities are not easily

23   transferable to what may be the more grueling environment of the workplace, where it

24

25

might be impossible to periodically rest or take medication." *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ability to attend medical appointments on a less frequent basis than a full-time job also does not equate to maintaining a regular workplace attendance.

Further, the record shows that plaintiff struggled to manage her self-care—she struggled to leave her bed, she needed assistance with getting dressed, she had difficulty washing her hair, and other difficulties with using the bathroom. AR 414. The record also shows that plaintiff's household chores consisted of preparing meals, doing laundry, and cleaning dishes—but even those were completed with some difficulty. AR 415. Plaintiff often relied on microwavable dinners or raw foods and it took her an excessive amount of time to clean up dishes. *Id.* Plaintiff's ability to tend to her self-care, perform chores, and attend her medical appointments does not negate Dr. Shenoy's opinion, therefore the ALJ erred in discounting the medical opinion for this reason.

4. Opinion of Dr. Koenig

Elizabeth Koenig, M.D., evaluated plaintiff on April 1, 2014 by conducting a psychiatric interview and a mental status examination. AR 683-90. She opined that plaintiff would have difficulty -- interacting effectively with others, tolerating workplace stress, and maintaining regular attendance due to pain and health concerns. AR 689.

Plaintiff assigns error to the ALJ's decision to give "little weight" to Dr. Koenig's opinion because (1) Dr. Koenig did not perform a physical evaluation, (2) it was heavily based on plaintiff's self-reporting, (3) it was inconsistent with her own notes, and (4) it was inconsistent with the overall objective medical evidence. Dkt. 12, pp. 11-13; AR 1585-86.

1    The ALJ first discounted the portion of Dr. Koenig's opinion about plaintiff's pain

2  and health concerns affecting plaintiff's ability to maintain regular attendance in the

3  workplace because Dr. Koenig did not perform a physical examination. AR 1585. The

4  ALJ could discount this portion of the opinion regarding plaintiff's physical

5  limitations. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the

6  opinion of a specialist about medical issues related to his or her area of specialty than to

7  the opinion of a source who is not a specialist.").

8    However, this reasoning is not applicable to the other portions of Dr. Koenig's

9  opinion regarding plaintiff's psychological conditions. *See Anderson v. Colvin*, 223

10  F.Supp.3d 1108, 1121-22 (D. Or. 2016) (finding the ALJ erred in discounting a licensed

11  psychologist's opinion regarding the claimant's psychological condition). Dr. Koenig's

12  opinion included both physical and mental limitations, but since Dr. Koenig only

13  performed a psychiatric interview with plaintiff, the ALJ reasonably discounted the

14  portion of her opinion regarding plaintiff's physical limitations. The ALJ, however, could

15  not discount the portion of Dr. Koenig's opinion as to plaintiff's mental limitations, on the

16  grounds that Dr. Koenig did not perform a physical examination. The ALJ's decision to

17  give "little weight" to her entire opinion for that reason was error.

18    With regards to the ALJ's second reason, "[an] ALJ may reject a treating

19  physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have

20  been properly discounted as incredible." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041

21  (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th

22  Cir. 1999) (*citing Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989)). But this situation is

23  different when a doctor provides his own observations in support of his assessments

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.,* 528 F.3d 1194, 1199–1200 (9th Cir. 2008).

Here, in discounting Dr. Koenig's opinion, the ALJ found that it heavily relied on plaintiff's self-reports because Dr. Koenig had only reviewed one treatment note from 2012. AR 1358. But Dr. Koenig's opinion consists of more than just a review of a treatment note and plaintiff's self-reports. Dr. Koenig made her own general observations about plaintiff (AR 683); observations about plaintiff's concentration, persistence, and pace (AR 687); and conducted a mental status examination evaluating plaintiff in several areas, including her content of thought, mood/affect, and intellectual functioning. AR 687-88. Additionally, Dr. Koenig made her own diagnosis about plaintiff's impairments. AR 688-89. While Dr. Koenig's opinion did include plaintiff's self-reports, she also made her own observations and conducted her own examinations to support her assessments. The ALJ's finding that Dr. Koenig's opinion was heavily based on plaintiff's self-reports is not supported by the record.

Furthermore, psychiatric evaluations "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient[,]" because "'[u]nlike a broken arm, a mind cannot be x-rayed.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Id.* Therefore, the ALJ's decision to give little weight to Dr. Koenig's opinion was error.

1       With regards to the ALJ's third reason, an ALJ may reject a doctor's opinions

2   when they are inconsistent with the doctor's own treatment notes. *Nguyen v.*

3   *Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996). Here, the ALJ found an inconsistency

4   when Dr. Koenig opined that plaintiff had limited ability in math but also opined that

5   plaintiff could manage her own funds. AR 1585-86. But Dr. Koenig's opinion specifically

6   referred to plaintiff's limitation "in her ability *to do work* that requires math." AR 690

7   (emphasis added). The ALJ does not explain how Dr. Koenig's assessment about

8   plaintiff's possible "mathematics disorder" with respect to her abilities to work negates

9   Dr. Koenig's opinion about whether plaintiff can manage her own funds (i.e., handling

10  her personal finances, as opposed to handling math when she is in a full time work

11  setting). The ALJ's finding that Dr. Koenig's opinion was inconsistent with her own notes

12  was not supported by substantial evidence, therefore the ALJ erred in discounting it.

13      With regards to the ALJ's fourth reason, a finding that a

14  physician's opinion is inconsistent with the medical record may serve as a specific and

15  legitimate reason. *See* 20 C.F.R.§§404.1527(c)(4), 416.927(c)(4); *Ghanim v. Colvin*,

16  763 F.3d 1154, 1161 (9th Cir. 2014).

17      Here, the ALJ found that the longitudinal record showed that plaintiff had minimal

18  mental health treatment. AR 1586. An ALJ may properly rely on evidence which shows

19  "an unexplained, or inadequately explained, failure to seek treatment or follow a

20  prescribed course of treatment" to discount a plaintiff's statements. *Fair v. Bowen*, 885

21  F.2d 597, 603 (9th Cir. 1989); *see* SSR 96-7p ("the individual's statements may be less

22  credible if the level or frequency of treatment is inconsistent with the level of complaints.

23  . . . and there are no good reasons for this failure"). Yet, the ALJ's finding is not

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

1    supported by the record, which includes evidence of plaintiff seeking out treatments to

2    cope with her mental impairments. AR 1798-1805, 1947-48, 1950, 1807-08.

3         The ALJ also found the longitudinal record showing that plaintiff was alert,

4    focused, and cooperative during her medical appointments contradicted Dr. Koenig's

5    opinion. AR 1586. However, the ALJ does not explain how plaintiff's presentation during

6    her medical appointments negates Dr. Koenig's opinion about plaintiff's ability to handle

7    work-related stress, interacting with others, and maintaining workplace attendance.

8    *See Mulanax v. Comm'r of Soc. Sec. Admin.*, 293 Fed.Appx. 522, 523 (9th Cir. 2008)

9    (citing SSR 96-8p) ("Generally, in order to be eligible for disability benefits under the

10   Social Security Act, the person must be unable to sustain full-time work – eight hours

11   per day, five days per week."). In sum, the ALJ's finding that Dr. Koenig's opinion was

12   inconsistent with the longitudinal record is not supported by substantial evidence,

13   therefore the ALJ harmfully erred for giving "little weight" to Dr. Koenig's opinion on this

14   basis.

15        5.   Opinion of Dr. Yun

16        Jenna Yun, Ph.D. evaluated plaintiff on September 5, 2015 by conducting a

17   psychological evaluation and reviewing plaintiff's records. AR 1447-51. She diagnosed

18   plaintiff with: bipolar II disorder, depression; generalized anxiety disorder; and borderline

19   personality disorder. AR 1448-49. She opined that plaintiff's ability was severely and

20   markedly limited with respect to maintaining appropriate behavior in a work setting, and

21   completing a normal work day and work week without interruptions from psychologically

22   based symptoms. AR 1450.

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 13

1       Plaintiff argues ALJ erred in giving "little weight" to Dr. Yun's opinion because (1)

2   Dr. Yun opined that plaintiff's impairments would last nine to twelve months, (2) plaintiff

3   had engaged in counseling only a few months before Dr. Yun's evaluation, (3) it was

4   inconsistent with objective medical evidence, and (4) it was inconsistent with plaintiff's

5   daily activities. Dkt. 12, pp. 12-13; AR 1584.

6       With regards to the ALJ's first reason, the ALJ correctly notes that an impairment

7   must last "not less than 12 months" in order for there to be a determination of disability.

8   20 C.F.R. § 404.1505(a). Here, Dr. Yun wrote that plaintiff's impairment's length of time

9   with available treatment would be "9-12 months." AR 1450. However, plaintiff's alleged

10  onset date is March 1, 2013 and her last date insured is March 31, 2018. AR 1571. A

11  claimant's disability status is determined if "'within 12 months after the onset of an

12  impairment . . . the impairment no longer prevents substantial gainful activity.'" *Barnhart*

13  *v. Walton*, 535 U.S. 212, 217 (2002) (citing 65 Fed. Reg 42774 (2000)). Dr. Yun

14  provided her opinion in September 2015, more than two years since plaintiff's alleged

15  onset date, thus meeting and going beyond the twelve-month requirement. The ALJ's

16  decision to discount Dr. Yun's opinion because of her opined duration was therefore

17  error.

18      With regards to the ALJ's second reason, an ALJ is entitled to discount a medical

19  opinion regarding limitations from a condition for which a claimant has had "gaps in

20  treatment for." *Blacksher v. Berryhill*, 762 Fed. Appx. 372, 374 (9th Cir. 2019); *Evans v.*

21  *Berryhill*, 759 Fed. Appx. 606, 608 (9th Cir. 2019) (affirming an ALJ's rejection of a

22  treating physician's opinion in part because plaintiff "received only sporadic treatment

23  for his condition"). However, the record shows that plaintiff had sought treatment for her

24

25

1   mental health as far back as October 2012 when she attended a medical appointment

2   for general anxiety and panic attack (AR 508) and again in December 2012. AR 512.

3   The record also shows that plaintiff attended more appointments due to anxiety,

4   depression, and other mental impairments. AR 525, 541, 543, 568-70, 574-77, 711,

5   923-26. The ALJ has failed to provide substantial evidence to support the finding that

6   plaintiff had not engaged in enough counseling prior to Dr. Yun's opinion. Accordingly,

7   the ALJ has erred for discounting her opinion for this reason.

8       Regarding the ALJ's third reason, a finding that a

9   physician's opinion is inconsistent with the medical record may serve as a specific and

10  legitimate reason for discounting it. *See* 20 C.F.R. §§

11  404.1527(c)(4), 416.927(c)(4); *Ghanim v. Colvin*, 763 F.3d at 1161 (9th Cir. 2014).

12      Here, the ALJ pointed out that Dr. Yun's own evaluation noted that plaintiff was

13  well groomed, cooperative, and that her thought process, thought content, orientation,

14  perception, and fund of knowledge were all within normal limits. AR 1588 (citing AR

15  1150-51). The ALJ also pointed out that Dr. Yun noted that plaintiff had inconsistent

16  results as to her Personality Assessment Inventory. AR 1588.

17      But Dr. Yun's mental status exam observations during plaintiff's appointment do

18  not necessarily negate her findings regarding plaintiff's limitations, which were made

19  "based on the individual's ability to sustain [an] activity over a normal workday and

20  workweek on an ongoing, appropriate, and independent basis." AR 1449. The

21  conditions of a medical appointment are not similar to those of a working environment,

22  therefore Dr. Yun's notes about plaintiff's presentation in her office would not

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 15

1    necessarily contradict her opinion about plaintiff's ability to effectively function in a

2    workplace.

3         As to the ALJ's fourth reason, as discussed above, inconsistency with a

4    claimant's activities may serve as a proper basis for rejecting a medical source's

5    opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Yet disability claimants

6    should not be penalized for attempting to lead normal lives in the face of their

7    limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v.*

8    *Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant need not "vegetate in a dark room"

9    in order to be deemed eligible for benefits)).

10        Here, the ALJ pointed to plaintiff's ability to tend to her self-care, drive a car, take

11   transportation, and maintain her appointments. AR 1584. However, "many home

12   activities are not easily transferable to what may be the more grueling environment of

13   the workplace, where it might be impossible to periodically rest or take medication." *See*

14   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ does not explain how

15   any of these activities contradict Dr. Yun's opinion about plaintiff's mental health

16   affecting her ability to work, therefore the ALJ erred in discounting her medical opinion

17   for this reason.

18        6.  Opinion of Lorraine Chase, CDP

19        Lorraine Chase, CDP, provided a functional assessment on August 25, 2017. AR

20   928-30. Ms. Chase had 21 sessions with plaintiff from April 2015 through June 2016 by

21   the time she wrote the statement. AR 928. She opined that plaintiff would be off task for

22   at least eleven to twenty percent of the work day or work week, and off task more than

23

24

25

1  twenty percent of the work day or work week, i.e. up to two hours/day or one day/week.

2  AR 928.

3      Plaintiff argued that the ALJ erred by giving "little weight" to her opinion because

4  it was (1) inconsistent with her own notes and (2) because of plaintiff's daily activities.

5  Dkt. 12, p. 13-14; AR 1586.

6      Plaintiff filed her application before March 27, 2017. Under the Social Security

7  regulations applicable to this case, "only 'acceptable medical sources' can [provide]

8  medical opinions [and] only 'acceptable medical sources' can be considered treating

9  sources." *See* SSR 06-03p. In addition, there are "other sources" such as nurse

10  practitioners, therapists, and chiropractors, who are considered other medical sources.

11  S*ee* 20 C.F.R. § 404.1513(d)(1). *See also Turner v. Comm'r of Soc. Sec.,* 613 F.3d

12  1217, 1223–24 (9th Cir. 2010); SSR 06–3p. Evidence from "other medical sources" may

13  be discounted if, as with evidence from lay witnesses in general, the ALJ "gives reasons

14  germane to each [source] for doing so." *Molina v. Astru*e, 674 F.3d 1104, 1111 (9th Cir.

15  2012) (citations omitted).

16      With regards to the ALJ's first reason, an ALJ may discredit a medical opinion if

17  the opinion is contradicted by the offering provider's own treatment notes. *Buck v.*

18  *Berryhill,* 869 F.3d 1040, 1050 (9th Cir. 2017). Here, the ALJ found that Ms. Chase's

19  notes about plaintiff's ability to attend their sessions on time and plaintiff's presentation

20  during their appointments contradicted her own opinion about plaintiff's being off task for

21  eleven to twenty percent. AR 1586. However, Ms. Chase's assessment does not

22  contain any of these observations. Ms. Chase wrote that she had 21 sessions with

23  plaintiff, but does not state whether plaintiff attended them in a timely manner. AR 928.

24

25

The assessment also does not describe plaintiff's presentation during any of these appointments. The assessment instead includes Ms. Chase's opinions about plaintiff's limitations when it comes to the workplace and work activities. Accordingly, the ALJ erred in giving "little weight" to Ms. Chase's opinion for that reason.

With regards to the ALJ's second reason, a conflict between the opinion of a non-acceptable medical source and a claimant's activities of daily living can serve as a germane reason for discounting such an opinion. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2007). Here, the ALJ found that plaintiff's ability to travel, drive, take public transportation, spend time with others, and go shopping did not reflect the limitations imposed by Ms. Chase on plaintiff. AR 1586. But the ALJ does not provide an explanation as to how these activities negate Ms. Chase's opinion about plaintiff being off task for at least eleven percent of the work day. Therefore, the ALJ did not provide a germane reason, supported by substantial evidence, to discount Ms. Chase's opinion. *See Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (ALJ did not provide germane reasons for discounting lay testimony when he failed to explain how the plaintiff's daily activities contradicted the lay testimony).

7. Opinion of Dr. Hurley

Non-examining state agency consultant Wayne Hurley, M.D., evaluated plaintiff on April 24, 2014 by reviewing plaintiff's records. AR 154-68. He opined that plaintiff could never reach with her right upper extremity due to adhesive capsulitis. AR 163.

Plaintiff argues that the ALJ erred in giving "no weight" to this portion of Dr. Hurley's opinion because it was inconsistent (1) with plaintiff's daily activities and (2)

1  with medical evidence showing plaintiff's shoulder had improved with therapy. Dkt. 12,

2  p. 15; AR 1583.

3         With regards to the ALJ's first reason, as previously discussed, inconsistency

4  with a claimant's activities may serve as a proper basis for rejecting a medical source's

5  opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Yet disability claimants

6  should not be penalized for attempting to lead normal lives in the face of their

7  limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v.*

8  *Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant need not "vegetate in a dark room"

9  in order to be deemed eligible for benefits)). Here, the ALJ specifically pointed to

10 plaintiff's ability to drive on her own to Oregon, but does not explain further how driving

11 contradicts Dr. Hurley's finding that plaintiff can never reach with her upper right

12 extremity. *See* AR 1583. Without more, the ALJ cannot properly discount Dr. Hurley's

13 opinion for that reason without committing error.

14        Regarding the ALJ's second reason, a finding that a claimant's impairments are

15 successfully managed with treatment can serve as a clear and convincing reason for

16 discounting a claimant's testimony. *See* 20 C.F.R. § 416.929(c)(3)(iv) (the effectiveness

17 of medication and treatment are relevant to the evaluation of a claimant's alleged

18 symptoms); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

19        Here, the ALJ pointed to treatment notes from other medical sources discussing

20 plaintiff's progress with his shoulder. AR 668, 671. However, the treatment notes do not

21 necessarily indicate that plaintiff's improvement is so impressive that it would contradict

22 Dr. Hurley's opinion. To the contrary, both are consistent with Dr. Hurley's finding that

23 plaintiff has adhesive capsulitis. While one note includes plaintiff's report that she has

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 19

noticed improvement from physical therapy, the other hypothesizes that plaintiff "should do well" and she would be able to return to "full function of her shoulder" so long as she performs her physical therapy. *See* AR 668, 671. There is not substantial evidence to support the ALJ's decision discounting Dr. Hurley's opinion, therefore the ALJ erred.

Plaintiff also argues that the ALJ erred by failing to address the portion of Dr. Hurley's opinion regarding plaintiff requiring a medically required hand-held device for ambulation. Dkt. 12, p. 16. Plaintiff points out that the regulations require the ALJ to "always consider the medical opinions" in a claimant's case. *See* 20 C.F.R. § 404.1527(b). Here, the ALJ did consider the opinion, assigning it weight and providing explanations for that weight, therefore the Court cannot say the ALJ erred. Further, while the ALJ has the duty to weigh all of the evidence in the record to reach an RFC assessment, they are not required to discuss each piece of evidence. *Cole v. Astrue*, 395 Fed. Appx. 387, 389 (9th Cir. 2010).

8. Opinion of Dr. Haas

Eric Anthony Haas, M.D., evaluated plaintiff on February 6, 2015 and opined that plaintiff can only sit, stand, and walk for five hours and twenty minutes in an eight-hour workday. AR 761. He also opined that plaintiff requires the use of a cane to ambulate, that the cane is medically necessary, and that plaintiff can only ambulate for four blocks on a good day. AR 761. He further opined that plaintiff would be limited in reaching, pushing, and pulling with both arms. AR 762.

Plaintiff argues that the ALJ erred in giving "little weight" to Dr. Haas's opinion because it was (1) inconsistent with his own notes, and (2) it was inconsistent with longitudinal record.

1        As discussed above, an ALJ may reject a doctor's opinions when they are

2   inconsistent with the doctor's own treatment notes. *Nguyen v. Chater,* 100 F.3d 1462,

3   1464 (9th Cir. 1996). Here, the ALJ first pointed to Dr. Haas's notes about plaintiff's pain

4   improving. AR 1584 (citing AR 843). The notes, discussing plaintiff's complaint about

5   her shoulder, hip, arms, and knees, state that plaintiff's "[s]ymptoms improved with pain

6   medication." AR 843. The notes then proceed with statements about how plaintiff's

7   symptoms are exacerbated, how she is still unable to drive, and unable to shop for

8   groceries. AR 843. Nothing else in Dr. Haas's treatment notes from the February 2015

9   appointment indicates that plaintiff's symptoms had improved to such a degree that it

10  would negate his opinion about plaintiff's limitations with sitting, standing, and walking.

11       The ALJ also pointed out Dr. Haas's notes -- about plaintiff occasionally walking

12  for exercise -- contradicts Dr. Haas's opinion. AR 1584 (citing AR 845). Dr. Haas opined

13  that plaintiff could walk for ten minutes at one time without interruption and for twenty

14  minutes in an eight-hour workday. AR 761. Dr. Haas's notes do not provide further

15  information as to plaintiff's walking regimen—only that she does so "occasionally." The

16  notes do not show if plaintiff walks for longer than ten minutes or if she is able to do so

17  without interruption. Nothing in Dr. Haas's note about plaintiff walking for exercise

18  necessarily contradicts his opinion about her walking limitation.

19       Finally, the ALJ found that Dr. Haas's observations about plaintiff being in no

20  distress, having normal gait, and unremarkable mental status findings during their

21  appointments contradicted Dr. Haas's opinion. AR 1584 (citing AR 843, 845-46). Again,

22  none of these observations necessarily contradict Dr. Haas's opinion, which primarily

23  concerned plaintiff's physical impairments. In sum, the ALJ's decision to give "low

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 21

weight" to Dr. Haas's opinion on the basis that it was inconsistent with Dr. Haas's notes is not supported by substantial evidence. Accordingly, the ALJ erred in discounting it for that reason.

With regards to the ALJ's second reason, as previously discussed, a finding that a physician's opinion is inconsistent with the medical record may serve as a specific and legitimate reason for discounting it. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Here, the ALJ found that Dr. Haas's opinion about the plaintiff's need for a cane was inconsistent with the longitudinal record showing plaintiff has normal gait or that plaintiff is able to ambulate without assistance. AR 1499, 1762-63, 1869. While observations about plaintiff's normal gait during her appointments do not necessarily contradict Dr. Haas's opinion about plaintiff's ability to walk within an eight-hour workday, medical records showing that plaintiff is able to ambulate without assistance provides substantial evidence to negate Dr. Haas's opinion about plaintiff's need for a cane to ambulate. Accordingly, the ALJ did not err in discounting Dr. Haas's opinion as to plaintiff's use of a cane.

C. Harmless Error

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

The ALJ's errors are not harmless because a proper evaluation of the medical opinions of Dr. Shenoy, Dr. Koenig, Dr. Yun, Lorraine Chase, CDP, Dr. Hurley, and Dr.

1   Haas could change the ALJ's assessment of Plaintiff's RFC and may affect the

2   hypotheticals provided to the Vocational Expert.

3       D.   Whether the ALJ's RFC Determination Was Supported by Substantial Evidence

4           Plaintiff argues that the ALJ's RFC determination is not supported by substantial

5   evidence because the ALJ failed to include several limitations identified in the medical

6   record.  Dkt. 12, pp. 16-18.

7           The ALJ committed harmful error, necessitating the ALJ's reassessment of the

8   medical opinions of: Dr. Shenoy, Dr. Koenig, Dr. Yun, Lorraine Chase, CDP, Dr. Hurley,

9   and Dr. Haas, on remand. *See* Sections IV.B.3–8, *supra*. Therefore, the ALJ must

10  reassess the RFC on remand. *See* Social Security Ruling 96-8p (an RFC "must always

11  consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec.*

12  *Admin.,* 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a

13  claimant's limitations is defective").

14      E.   Remand With Instructions for Further Proceedings

15          Plaintiff requests that the Court remand this case for an award of benefits from

16  the alleged onset date through May 19, 2021. Dkt. 12, p. 18.

17          "'The decision whether to remand a case for additional evidence, or simply to

18  award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664,

19  682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If

20  an ALJ makes an error and the record is uncertain and ambiguous, the court should

21  remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

22  (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 23

1   the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

2   at 668.

3          The Ninth Circuit has developed a three-step analysis for determining when to

4   remand for a direct award of benefits. Such remand is generally proper only where

5          "(1) the record has been fully developed and further administrative
           proceedings would serve no useful purpose; (2) the ALJ has failed to
6          provide legally sufficient reasons for rejecting evidence, whether claimant
           testimony or medical opinion; and (3) if the improperly discredited
7          evidence were credited as true, the ALJ would be required to find the
           claimant disabled on remand."

8   *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.

9   2014)).

10         The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is

11  satisfied, the district court still has discretion to remand for further proceedings or for

12  award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

13         As discussed above, the ALJ harmfully erred in evaluating medical opinion

14  evidence from Dr. Shenoy, Dr. Koenig, Dr. Yun, Lorraine Chase, CDP, Dr. Hurley, and

15  Dr. Haas. On remand, the ALJ is directed to re-evaluate their opinions and allow plaintiff

16  to provide additional testimony and evidence, as necessary to clarify the record.

1

CONCLUSION

2          Based on the foregoing discussion, the Court finds the ALJ erred when she

3  determined plaintiff to be not disabled. Defendant's decision to deny benefits is

4  therefore REVERSED and this matter is REMANDED for further administrative

5  proceedings. The ALJ is directed to reevaluate medical opinion evidence on remand.

6          Dated this 1st day of April, 2022.

7

8

9                                          _Theresa L. Fricke_

10                                         Theresa L. Fricke
                                           United States Magistrate Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25